UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

)
In re:                                        )         Chapter 7
                                              )         Case No. 07-42603-MSH
LIEBFRIED AVIATION, INC.                      )
                                              )
Debtor.                                       )
                                              )

**MEMORANDUM OF DECISION ON APPLICATION FOR COMPENSATION OF
JOSEPH H. O'DONNELL, CPA**

This matter came before me for hearing on Joseph O'Donnell's Application for Compensation for Professional Services Rendered From June 1, 2009 Thru [sic] August 31, 2009 [#125], with Supplement [#128],[1] and the Chapter 7 trustee's objection thereto [#129]. I will deny the application for compensation because Mr. O'Donnell is not a disinterested person as required by the Bankruptcy Code, 11 U.S.C. § 101 et seq. I will also require Mr. O'Donnell to disgorge money paid to him post-petition by the debtor because Mr. O'Donnell accepted those payments for post-petition services without having sought, much less received, Court approval of those payments.

**Background**

The debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 11, 2007. On March 11, 2008 the debtor filed an application to employ Mr. O'Donnell, a certified public accountant, to prepare its corporate tax returns. In his affidavit Mr. O'Donnell stated that he had no connection with the debtor, any creditor, or other party in interest, their

---

[1] The supplement was filed in response to my order of November 10, 2010 requiring Mr. O'Donnell to submit a signed copy of the application and to provide copies of his time records. The Supplement is signed but no time records are included.

1

respective attorneys and accountants and that he and his firm were disinterested persons as defined by § 101(14) of the Bankruptcy Code. He also stated in his affidavit that he had reviewed the provisions of Massachusetts Local Bankruptcy Rule ("M.L.B.R.") 2016-1. The Court held a hearing on the motion to employ on March 27, 2008 and on the same day entered an order allowing it. On August 6, 2010 the case was converted to one under Chapter 7 and the Chapter 7 trustee was appointed. The Chapter 7 trustee has not sought permission to employ Mr. O'Donnell.

The Chapter 7 trustee represents that his review of the debtor's records reveals that Mr. O'Donnell has performed significant accounting work not only for the debtor but also for Andrew Liebfried, the debtor's principal, and the Liebfried Realty Trust of which Andrew Liebfried and his family are beneficiaries. According to the Chapter 7 trustee, Mr. O'Donnell prepared the debtor's 2007 federal income tax return, which lists among the debtor's assets as of December 31, 2007 a $228,909 "loan to shareholder". The trustee averred that the same tax return lists a $35,582 "loan rec--LRT" as of the beginning of 2007 with a zero balance as of the end of that year as well as a $904 "loan pay—LRT" as of the end of that year.[2] The Chapter 7 trustee further noted that the debtor's 2008 federal income tax return lists the beginning balance of the shareholder loan as $8,909 while listing the remaining $220,000 as "Uncertain S/H Rec at B/R." The 2008 tax return also indicates that the "Loan pay—LRT" item increased to $20,809.

In addition, the Chapter 7 trustee represented that the debtor's internal accounting records indicate that during the Chapter 11 phase of this case the debtor paid Mr. O'Donnell a total of $5,500 or $5,600 by means of at least three separate checks beginning on May 8, 2008. The Chapter 7 trustee also maintains that in January 2011, after the case had been converted, Mr.

---

[2] The Chapter 7 trustee identified LRT as the Liebfried Realty Trust. Mr. O'Donnell did not dispute this.

2

O'Donnell appears to have received an additional payment of $500 from the debtor for accounting services previously rendered. The Chapter 7 trustee notes that based on the debtor's internal accounting records, it appears that on at least one occasion the debtor paid Mr. O'Donnell for worked performed for the Liebfried Realty Trust. None of these payments appeared on the debtor's monthly operating reports filed with the United States trustee.

At the hearing on his fee application Mr. O'Donnell acknowledged that he has performed accounting services for the Liebfrieds and their entities since the mid 1990s. He blamed the debtor's attorney for failing to disclose his connections with these debtor affiliates stating that she had prepared his affidavit which he signed but did not read. He admitted having sent the debtor invoices for services rendered post-petition for which he received payments from the debtor without seeking Court approval. Apparently oblivious to the requirements of Bankruptcy Code § 330, Mr. O'Donnell explained that the reason he filed the fee application presently before me was because, unlike his prior bills to the debtor, this time the debtor had failed to paid him.

## Discussion

Although, as the Chapter 7 trustee correctly notes, Mr. O'Donnell's fee application fails to comply with M.L.B.R. 2016-1 and my November 10, 2010 order, this lack of compliance pales in comparison to the other deficiencies presented by the facts before me.

Section 327(a) of the Bankruptcy Code permits a trustee or debtor in possession, "with the court's approval ... [to] employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons…." 11 U.S.C. § 327(a). Among other things, a "disinterested person" cannot be "a creditor, equity security holder, or an insider: of the debtor nor can he "have an

3

interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or for any other reason." 11 U.S.C. § 101(14)(A) and (C). Although the Bankruptcy Code does not define "adverse interest," the First Circuit noted that "'adverse interest' has been described in pragmatic terms as the "possess[ion] or assert[ion][of] mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between rival claimants as to which ... of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) [the possession of] a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities." *Rome v. Braunstein,* 19 F.3d 54, 58 n. 1 (1st Cir. 1994) (quoting *In re Roberts,* 46 B.R. 815, 826-27 (Bankr. D. Utah 1985)). As the *Rome* court noted, the Bankruptcy Code places an affirmative obligation on the bankruptcy court to undertake a rigorous conflict of interest analysis. *Id.*

To ensure that the appropriate level of disclosure is made, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and its local counterpart, M.L.B.R. 2014-1, require an applicant to file a verified statement disclosing "the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P.2014(a). M.L.B.R. 2014-1(b)(1)(A) expressly requires that among the connections and relationships to be disclosed are

> The professional's representation of the debtor or any affiliate of the debtor as that term is defined in 11 U.S.C. § 101(2), or any insider of the debtor as that term is defined in 11 U.S.C. § 101(31) at any time….

4

The rule also imposes a continuing duty on the professional to "amend this statement immediately upon my learning that that (A) any of the within representations are incorrect or (B) there is a change of circumstance relating thereto." M.L.B.R. 2014(a)(5).

[T]he requirements of the rule transcend those of § 327(a), as they mandate disclosure of all connections with the named parties, rather than being limited to those which deal with disinterestedness." *In re Filene's Basement, Inc.*, 239 B.R. 850, 856 (Bankr. D. Mass. 1999). "The purpose of the disclosure requirements is to provide the court with information necessary to determine whether the professional's employment meets the broad test of being in the best interests of the estate." *Id.* at 855-56. "Failure to be forthcoming with disclosure provides the bankruptcy court with an independent ground for disqualification." *Id.* at 856 citing *Miller v. United States Trustee (In re Independent Engineering Co.),* 232 B.R. 529, 532 (1st Cir. BAP 1999); *Leslie Fay Cos.* at 533; *In re EWC, Inc.,* 138 B.R. 276, 281-82 (Bankr.W.D.Okla.1992). *See also Smith v. Marshall (In re Hot Tin Roof, Inc.),* 205 B.R. 1000, 1003 (1st Cir. BAP 1997).

Mr. O'Donnell has failed to provide the level of disclosure required by the Bankruptcy Code and rules, which was and continues to be his personal responsibility. His attempt to blame his lack of compliance on the debtor's attorney is unpersuasive, unprofessional and unavailing. Even without reference to the specific facts that call into question Mr. O'Donnell's purported disinterestedness and lack of a material adverse interest as regards the debtor and the bankruptcy estate, his failure even to disclose his connections to the debtor's principal and affiliated entity provides sufficient grounds to warrant disqualifying him from his engagement, vacating the Court's prior order approving his employment by the debtor and denying the application before me.

Moreover, Mr. O'Donnell swore under oath in his affidavit that he had reviewed M.L.B.R. 2016-1. That rule requires any professional seeking interim or final compensation for services rendered to a debtor to file with the Court a fee application which sets forth a number of specific items. Mr. O'Donnell has acknowledged that he repeatedly failed to abide by this rule and in fact filed the instant application only because the debtor had not paid his invoice when presented..

## Conclusion

Mr. O'Donnell is not entitled to any of the compensation, be it for fees or expenses, he has received from the debtor following the filing of the debtor's bankruptcy petition on July 11, 2007. His fee application will be denied, the order of March 28, 2008 authorizing his employment will be vacated and he will be required to disgorge those fees paid to him by the debtor for post-petition services rendered or expenses incurred..

A separate order will issue.

Dated: February 25, 2011                                By the Court,

                                                        *[signature]*

                                                        Melvin S. Hoffman
                                                        U.S. Bankruptcy Judge